THE HONORABLE JOHN C. COUGHENOUR

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10
11
12
13
14

| | |
|---|---|
| PRENTISS B. DAVIS,<br><br>                    Plaintiff,<br><br>        v.<br><br>THE BOEING COMPANY and AETNA<br>LIFE INSURANCE COMPANY,<br><br>                    Defendants. | CASE NO. C11-1033-JCC<br><br>ORDER ON DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT |

15
16
17
18
19
20

This matter comes before the Court on Defendant The Boeing Company's motion for summary judgment (Dkt. No. 34) and Plaintiff Prentiss B. Davis' motion to deny Boeing's motion (Dkt. No. 46). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part both parties' motions for the reasons explained herein.

**I.    BACKGROUND**

21
22
23
24
25
26

Davis' complaint states claims against Boeing for disability discrimination and failure to reasonably accommodate his disability in violation of the Americans with Disability Act ("ADA"), 42 U.S.C. § 12112 *et seq.* (Dkt. No. 1-1.) He seeks reinstatement of his employment with back pay (including raises he would have gotten), "prior/accrued seniority," "benefits/retirement options(s)," reinstatement of Boeing health insurance, reimbursement for

1   seven months of health insurance premiums Boeing allegedly required him to double-pay,

2   relocation funds allegedly promised him, "Boeing FAA Certification," and "compensation for

3   loss of use of left hand while employed with Boeing." (*Id.* at 1, 5–6 ¶¶ 11–12.)

4           Davis began working at Boeing's Everett, Washington facility as a temporary contract

5   engineer in August 2006. (*Id.* at 2 ¶ 4.) In January 2007, Boeing hired Davis as a full-time liaison

6   engineer, level 4. (*Id.* at 2 ¶ 5.) In March 2007, Boeing transferred Davis to Charleston, South

7   Carolina for an eighteen-month temporary assignment. (*Id.*)

8           Davis alleges that when Boeing hired him full-time, the company offered him a

9   relocation package to move from Texas to Washington, and that Boeing never paid him any

10  relocation funds. (*Id.* at 5 ¶¶ 11–12.)

11          Davis also alleges that in late 2006 and early 2007 Davis requested, and Boeing denied

12  him, a designated handicapped parking space. (*Id.* at 2 ¶¶ 4–5.)

13          Davis alleges that he was subject to several instances of discriminatory treatment and was

14  not reasonably accommodated while on his temporary assignment in Charleston. (*Id.* at 2–3 ¶ 5,

15  3 ¶ 8, 4 ¶¶ 9–10.) In March 2008, Davis filed an internal complaint about this alleged

16  mistreatment. (Dkt. No. 37 at 2 ¶ 4 & Ex. A.)

17          On May 15, 2008, Davis started a medical leave of absence. (Dkt. No. 1-1 at 4 ¶ 10.) The

18  leave was extended in July 2008. (*Id.*) Davis returned to Washington and in August, September,

19  and November 2008 the leave was extended again after doctors determined he was not able to

20  return to work. (*Id.* at 4–5 ¶ 10.) Davis would remain on medical leave through November 17,

21  2010. (*Id.* at 6 ¶ 13.)

22          On November 22, 2008, Davis severely injured his hand in an automobile accident. (*Id.* at

23  5 ¶ 12.) Davis alleges that, "[i]mmediately after the accident, Boeing refused to acknowledge to

24  the hospital(s) that [Davis] had Boeing Medical Insurance until [Davis] agreed to pay Boeing the

25  entire Boeing monthly [health insurance premium] of approximately $520/mo[nth] starting in

26  December 2008 [and continuing for more than seven months] out of his own pocket." (*Id.*) Davis

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT
PAGE - 2

alleges that, as a Boeing employee, he was already covered by Boeing's health insurance policy and so Boeing effectively double-charged him for health insurance before confirming his coverage to his treating hospitals. (*Id.* at 5–6 ¶ 12.) He alleges that Boeing has not reimbursed him for these seven-plus months of premium payments. (*Id.* at 6 ¶ 12.)

On February 11, 2009, Davis sent an email to info@eeoc.gov complaining about disability discrimination at Boeing. (*Id.* Ex. E at 20.) He complained about (1) Boeing's failure to accommodate his need for a designated handicapped parking space, (2) his managers' alleged discriminatory or unaccommodating treatment of him during his temporary assignment in Charleston, and (3) Boeing's alleged failure to confirm health insurance coverage to Davis' treating hospitals until Davis effectively double-paid the premiums. (*Id.*)

Boeing's leave of absence policy provided that "any combination of consecutive Medical leaves of absence . . . shall not exceed thirty (30) months in duration unless required by law." (Dkt. No. 36 Ex. A at 10 ¶ 5.) On August 12, 2010, Boeing sent Davis a letter informing him that he would exhaust his thirty-month allotment on November 16, 2010, and that if he did not actively return to work before that date, his employment with Boeing would end. (Dkt. No. 35 Ex. A at 5.) The letter informed Davis that if he was planning to return to work, he had to obtain a medical release to do so. (*Id.*) Boeing sent identical letters to Davis in September and October. (*Id.* Exs. B at 8, C at 11.) On August 18 and November 10, 2010, a doctor examined Davis and found that he could still not be released to work.[1] (Dkt. No. 1-1 at 6 ¶ 13; Dkt. No. 38 Ex. K at 38.) Boeing terminated Davis' employment on November 17, 2010. (Dkt. No. 1-1 at 6 ¶ 13.) Davis alleges that Boeing discharged him because he was disabled. (*Id.*)

---

[1] Davis alleges that a different doctor examined him on June 30, 2010 and issued Davis a conditional release to work effective August 27, 2010. (*Id.*) But the exhibit to which he cites is a conditional release to return to work on August 27, *2009*, and only with respect to Davis' hand injury. (Dkt. No. 1-1 Ex. L at 33.) The note further provides, "With regards to his back restrictions this should be addressed by his spine specialist." (*Id.*) Davis has submitted no evidence that a spine specialist ever released him to return to work.

Davis' ADA claims against Boeing can thus be summarized as follows: (1) discriminatory denial of relocation funds, (2) discriminatory failure to accommodate Davis' request for a designated handicapped parking space; (3) discriminatory treatment or failure to accommodate at Boeing's Charleston facility in early 2008; (4) discriminatory double-charging of health insurance premiums; and (5) discriminatory discharge in November 2010.

Davis filed a charge with the Equal Employment Opportunity Commission ("EEOC") on or around January 11, 2011.[2] The "particulars" of the charge are as follows:

> I started working for Boeing on January 24, 2007 as a Liaison Engineer IV and held that position until my termination on November 17, 2010.
>
> Both my manager, Boeing Medical and Boeing Aetna were aware of my physical disabilities. When I was notified that I had to provide medical documentation to return to work in August, 2010, I asked my providers to provide Boeing Medical with the appropriate documentation. When one provider explained that I was still not fit for duty, Boeing disregarded the advice of my provider and terminated my employment.
>
> I believe that I have been discriminated against because of my disabilities in violation of The Americans with Disabilities Act of 1990, as amended.

(Dkt. No. 37 Ex. L at 70.) The EEOC dismissed Davis' charge and issued him a right to sue. (Dkt. No. 1-1 Ex. R at 49–50.)

## II.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the

---

[2] The record does not show the date on which Davis filed his EEOC charge. The EEOC sent a notice of charge to Boeing dated January 21, 2011. (Dkt. No. 37 Ex. K at 66.) Davis therefore filed his charge, at the latest, on that date.

1  opposing party must show that there is a genuine issue of fact for trial. *Id.* at 331–33 & n.3. The

2  Court resolves reasonable doubts as to the existence of material facts against the moving party

3  and draws inferences in the light most favorable to the opposing party. *Addisu v. Fred Meyer,*

4  *Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

5        **B.**    **ADA Discrimination Claims**

6            **1.**    **Jurisdiction**

7        The Court must first determine the scope of its jurisdiction over Davis' claims. "[ADA]

8  claimants generally establish federal court jurisdiction by first exhausting their EEOC

9  administrative remedies." *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990); *see* 42 U.S.C.

10  § 12117(a) (ADA provision incorporating Title VII's enforcement procedures, 42 U.S.C.

11  §2000e-5). "[T]he district court has jurisdiction over any charges of discrimination that are like

12  or reasonably related to the allegations made before the EEOC, as well as charges that are within

13  the scope of an EEOC investigation that reasonably could be expected to grow out of the

14  allegations." *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003) (quotation marks omitted).

15  The Court construes the charges liberally. *Sosa*, 920 F.2d at 1456. "[T]he inquiry into whether a

16  claim has been sufficiently exhausted must focus on the factual allegations made in the charge

17  itself, describing the discriminatory conduct about which a plaintiff is grieving. Only by

18  engaging in such an inquiry will the actual focus of the administrative charge, and the scope of

19  the claims exhausted, be revealed." *Freeman v. Oakland Unified School Dist.*, 291 F.3d 632, 637

20  (9th Cir. 2002) (citation omitted).

21        Here, Davis' EEOC complaint clearly covers only Boeing's termination of Davis in

22  November 2010. The only wrong it alleges on the part of Boeing is "disregard[ing] the advice of

23  [Davis'] provider and terminat[ing] [Davis'] employment." (Dkt. No. 37 Ex. L at 70.) Indeed, in

24  its notice of charge to Boeing, the EEOC stated that the earliest and latest dates of the alleged

25  violation were August 18, 2010 and November 17, 2010, respectively. (*Id.* Ex. K at 66.) The

26  EEOC investigation would not have encompassed the additional charges of disability

discrimination Davis makes in his complaint, *i.e.*, those based on Boeing's alleged denial of a

designated handicapped parking space, Davis' alleged treatment by his managers while working

in the Charleston facility, Boeing's alleged double-charging of health insurance premiums, and

Boeing's alleged denial of promised relocation funds. Davis thus did not sufficiently exhaust

those additional employment discrimination charges by filing his EEOC charge. *See, e.g.*,

*Freeman*, 291 F.3d at 637 (teacher failed to exhaust where "[t]he factual allegations in

Freeman's EEOC charge refer only to discriminatory conduct in relation to a specific election"

and "[n]othing in the language of the charge itself would have resulted in an EEOC investigation

encompassing alleged discrimination in the context of teaching assignments, class size, and the

handling of the dispute over the eight-period work day"); *Rodriguez v. Airborne Express*, 265

F.3d 890, 897 (9th Cir. 2001) ("Rodriguez's charge of ethnic discrimination was very specific,

rendering it especially inappropriate to expand the civil action to include other claims."); *Turner

v. Dep't of Educ.*, 855 F. Supp. 2d 1155, 1171 (D. Haw. 2012) ("Plaintiff's allegations are based

on discrete acts that do not suggest a claim for any actions involving Plaintiff prior to the field

trip or that he was subject to a hostile work environment. Consequently, Plaintiff has not

exhausted his claims with regard to a hostile working environment.").

However, under *B.K.B. v. Maui Police Department*, 276 F.3d 1091 (9th Cir. 2002), a

court may equitably excuse a plaintiff's failure to exhaust administrative remedies where that

failure was "due to agency negligence." *Id.* at 1101–02. For example, "[i]f the [EEOC] charge

itself is deficient in recording [the plaintiff's] theory of the case due to the negligence of an

agency representative who completes the charge form, then the plaintiff may present her pre-

complaint questionnaire as evidence that her claim for relief [in the complaint filed in district

court] was properly exhausted." *Id.* at 1102. The question here is whether the Court should

consider Davis' February 11, 2009 email to info@eeoc.gov, in which he complained about some

of the instances of discriminatory treatment he brings up in his complaint, as evidence that he

exhausted those claims before the EEOC. Boeing encourages the Court to ignore this email

because it was not "a formal charge with the EEOC" and "thus, [Davis] was never issued a notice of his right to sue regarding the allegations he made in the email." (Dkt. No. 34 at 9 n.8.) But that begs the question whether the EEOC should have treated Davis' email as a formal charge, investigated the charge, forwarded a copy to Boeing, and issued Davis a right to sue. True, Davis' email did not meet the technical requirements for filing a charge with the EEOC. *See* 29 C.F.R. § 1601.8 ("[a] charge may be made in person or by *mail*") (emphasis added); *Id.* § 1601.9 ("[a] charge shall be in writing and signed and shall be *verified*") (emphasis added). But EEOC regulations provide that, notwithstanding the technical requirements for filing a charge,

> a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of. A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received.

*Id.* § 1601.12(b). For example, in *Edelman v. Lynchburg College*, 535 U.S. 106 (2002), the Supreme Court held that an employee "who faxed a letter to an EEOC field office . . . claiming 'gender-based employment discrimination,'" which did not contain an "oath or affirmation," counted as a "charge," and that Title VII and the regulations thereunder "demands an oath only by the time the employer is obliged to respond to the charge, not at the time an employee files it with the EEOC." *Id.* at 109, 113; *see id.* at 115 n.9 ("The general practice of EEOC staff members is to prepare a formal charge of discrimination for the complainant to review and to verify, once the allegations have been clarified."). And in Edelman's case, on remand, the Fourth Circuit held that the EEOC's failure to assign the employee's faxed letter an EEOC number and to forward a copy to his employer did not, as a matter of law, prevent the letter from being considered a "charge," because "[t]he problems noted by the [employer] are not deficiencies in the charge; they are failures of the EEOC to carry out its responsibilities under Title VII."

1   *Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 (4th Cir. 2002). "Once a valid charge has been

2   filed, a simple failure by the EEOC to fulfill its statutory duties regarding the charge does not

3   preclude a plaintiff's Title VII claim." *Id.*

4          It appears that such a failure occurred here—that the EEOC failed to follow the mandate

5   of its own regulations. Davis has presented evidence (a copy of the email) that "the Commission

6   receive[d]" his "written statement [that] . . . identif[ied] the parties, and . . . describe[d] generally

7   the action or practices complained of." 29 C.F.R. § 1601.12(b). That the EEOC did not act on

8   that statement, assign Davis' claim an EEOC number, and send notice to Boeing does not mean

9   that Davis did not exhaust his administrative remedies with respect to the charges contained in

10  the email. Here, "[a]lthough no explicit admission of agency negligence has been provided in the

11  record, [the email evidence] suggests that any deficiency in [acting on Davis' complaint and

12  sending notice to Boeing] should be attributed to the agency itself rather than to Plaintiff, since

13  the agency itself was on notice of Plaintiff's [claims]." *B.K.B.*, 276 F.3d at 1102; *see, e.g.*,

14  *Watson v. Gulf & W. Indus.*, 650 F.2d 990, 992–93 (9th Cir. 1981) ("Watson's mailing of the

15  charge and the EEOC's failure to process the form properly are . . . not detrimental to Watson's

16  claim. The EEOC permits a claimant to mail an unnotarized form to the district office. Watson

17  properly followed the EEOC's procedure; the commission's failure to act is not his

18  responsibility."). Davis is thus "entitled to a trial on the merits of his complaint insofar as it

19  relates to . . . alleged discriminatory acts . . . included in his [February 11, 2009 email] to the

20  EEOC" that are not barred by the applicable limitations period. *Id.* at 993.

21         In neither his EEOC charge nor his 2009 email did Davis mention Boeing's alleged

22  failure to pay him relocation funds. Nor is this allegation "like or reasonably related to the

23  allegations made" in those communications, or "within the scope of an EEOC investigation that

24  reasonably could be expected to grow out of the allegations" in those communications. *Leong*,

25  347 F.3d at 1122. The Court thus does not have jurisdiction over Davis' claim that Boeing

26  discriminated against him on the basis of his disability by denying him relocation funds.

1  Summary judgment for Boeing on this claim is GRANTED.

2            **2.**     **Statute of Limitations**

3          Discrimination claims under the ADA ordinarily must be filed with the EEOC within 180

4  days of the date on which the alleged discriminatory practice occurred. 42 U.S.C. § 2000e-

5  5(e)(1). However, if the claimant first "institute[s] proceedings" in a state with an agency that

6  enforces its own discrimination laws—a so-called "deferral" state—then the period for filing the

7  claim is extended to 300 days. *Id.* Boeing does not dispute that the applicable limitations period

8  here is 300 days, counting backwards from the date of the charge. (Dkt. No. 34 at 13.)[3]

9                 **a.**     **February 11, 2009 Email**

10          The limitations period applicable to the charges contained in the February 11, 2009 email

11  is thus April 17, 2008 through February 11, 2009. Davis' claims about Boeing's 2006 and 2007

12  failure to accommodate his handicapped parking needs are thus untimely. So are his claims as to

13  the discrimination he allegedly experienced in Charleston: All of those events took place in or

14  before March 2008, when Davis filed an internal complaint about them with Boeing. (Dkt. No.

15  37 at 2 ¶ 4 & Ex. A.) The Court thus GRANTS summary judgment for Boeing as to these claims.

16  However, the limitations period does not bar Davis' claim that Boeing discriminated against him

17  on the basis of his disability when it required him to effectively double-pay health insurance

18  premiums starting in late 2008.

19                 **b.**     **January 21, 2011 EEOC Complaint**

20          The limitations period applicable to Davis' January 21, 2011 charge began on March 27,

21  2010. All events occurring prior to that date are barred. The only event in Davis' complaint

22  occurring after that date, and respecting Boeing's conduct (as opposed to Defendant Aetna Life

23  --------------------------------

24       [3] Davis makes no argument that he is entitled to equitable tolling of the limitations

25  period. Nor is it available. "Equitable tolling applies when the plaintiff is prevented from
    asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary

26  circumstances beyond the plaintiff's control made it impossible to file a claim on time." *Stoll v.*
    *Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999). No such circumstances exist here.

1   Insurance Company's), is Davis' November 2010 termination.

2   ### 3.   Claim of Discriminatory Double-Charging of Health Insurance Premiums

4   Davis alleges that Boeing discriminatorily double-charged him health insurance

5   premiums in violation of the ADA. Boeing does not address this claim except to assert that, "[a]s

6   this is an issue covered by the collective bargaining agreement, any alleged violation should have

7   been resolved through the agreement's grievance and arbitration provision" and "[i]n any event,

8   Boeing paid the required medical insurance premiums after it was notified of the mistake." (Dkt.

9   No. 34 at 11 n.12.) Boeing does not cite to any part of the record establishing that "this is an

10  issue covered by the collective bargaining agreement" and thus not eligible for pursuit as an

11  ADA discrimination claim against Boeing, or that Boeing ever reimbursed Davis for the

12  premiums it "mistake[nly]" required him to pay. *See* Fed. R. Civ. P. 56(c) ("A party asserting

13  that a fact cannot be . . . genuinely disputed must support the assertion by . . . citing to particular

14  parts of materials in the record, including . . . documents, . . . affidavits or declarations, . . . or

15  other materials . . . ."). There is a genuine issue of fact as to whether Boeing discriminatorily

16  double-charged Davis, and whether Boeing ever reimbursed Davis for the several months of

17  premiums he paid out of his own pocket. Summary judgment for Boeing on this claim is

18  DENIED.

19  ### 4.   Discriminatory Discharge Claim

20  "In order to prevail on an employment termination claim under the ADA, a plaintiff must

21  establish: (1) that he is a disabled person within the meaning of the ADA; (2) that he is qualified,

22  that is, with or without reasonable accommodation (which he must describe), he is able to

23  perform the essential functions of the job; and (3) that the employer terminated him because of

24  his disability." *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996) (footnote omitted).

25  If the plaintiff establishes his prima facie case of discrimination, the burden shifts to the

26  defendant to show that its decision to end the plaintiff's employment was unrelated to the

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT
PAGE - 10

1    plaintiff's disability. *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001).

2    If the defendant proffers non-discriminatory reasons for its decision, the burden shifts back to the

3    plaintiff to demonstrate that the employer's stated reason for the termination was a pretext for

4    disability discrimination. *Id.*

5         Summary judgment for Boeing on Davis' discriminatory discharge claim is proper. Davis

6    has presented no evidence of the second element—that he is capable of performing the essential

7    functions of his position. To the contrary, he admits in his complaint that doctors have still not

8    cleared him to return to work. Moreover, Boeing has presented a nondiscriminatory reason for

9    Davis' termination: exhaustion of the thirty-month consecutive leave period. Davis has presented

10   no evidence that Boeing's reason for terminating Davis was a pretext for disability

11   discrimination. Davis contends that he was not on continuous leave since May 2008 because

12   Aetna denied him short-term disability benefits in September 2008 and did not start paying him

13   such benefits again until late 2009 after he injured his hand. (Dkt. No. 41 at 1 ¶ A.) But whether

14   Aetna was paying Davis disability benefits has nothing to do with whether Davis was on a leave

15   of absence. Davis has identified no evidence in the record that puts into dispute Boeing's

16   evidence that Davis was on a continuous medical leave of absence from May 16, 2008 until the

17   date Boeing terminated him thirty months later.

18        Summary judgment for Boeing is also proper if the Court interprets Davis' claim as a

19   failure-to-accommodate claim. To establish a claim for failure to provide reasonable

20   accommodation under the ADA, a plaintiff must show that "(1) he is disabled within the

21   meaning of the ADA; (2) he is a qualified individual able to perform the essential functions of

22   the job with reasonable accommodation; and (3) he suffered an adverse employment action

23   because of his disability." *Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003). Here, the

24   "reasonable accommodation" Davis alleges he was denied is *further* medical leave beyond the

25   thirty months Boeing had already given him—while holding his job open. "[T]he ADA does not

26   require an employee to show that a leave of absence is certain or even likely to be successful to

prove that it is a reasonable accommodation," but it does require him to prove that it "'could have plausibly enabled [him] to adequately perform his job . . . .'" *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1136 (9th Cir. 2001) (quoting *Kimbro v. Atl. Richfield Co.*, 889 F.2d 869, 879 (9th Cir. 1989)); *see Dark v. Curry County*, 451 F.3d 1078, 1090 (9th Cir. 2006) ("recovery time of unspecified duration may not be a reasonable accommodation (primarily where the employee will not be able to return to his former position and cannot state when and under what conditions he could return to work at all)"). Davis has submitted no evidence that extending his leave of absence while holding open his job "could have plausibly enabled [him] to adequately perform his job." *Humphrey*, 239 F.3d at 1136 (quoting *Kimbro*, 889 F.2d at 879). To the contrary, as early as September 15, 2008, his doctor stated, "The patient is unable to work. The patient needs a closing independent medical exam. My evaluation of the patient is that he will be unable to go back to work at Boeing . . . ." (Dkt. No. 38 Ex. G at 23.) On December 22, 2008, his doctor wrote, "[Davis] needs to be on an L&I pension program due to the fact that he is unable to hold down any type of gainful employment due to his L&I injury." (*Id.* Ex. H at 27.) On March 10, 2010, his doctor wrote, "[Davis] needs to be on L&I Pension. Unable to hold down any gainful employment." (*Id.* Ex. I at 29.) On August 18, 2010, an examining doctor wrote about Davis, "Unable to work, and need[s] to be on L&I pension." (*Id.* Ex. J at 31.) On November 11, 2010, his doctor again concluded that Davis was "unable to do any gainful employment." (*Id.* Ex. K at 38.) The record also shows that Davis continued to be completely disabled after November 2010. (*Id.* Exs. L at 41, M at 43.) In fact, in April 2011, Davis' doctor wrote, "I still feel he needs to be on a L&I pension program due to the fact that he is unable to hold down any type of gainful employment due to his L&I injury." (*Id.* Ex. M at 43.) And in February 2011, Aetna "determined that [Davis is] unable to perform the material duties of any occupation for which [he] may qualify for [sic] by education, training, and/or experience" because he was "considered to be totally disabled." (*Id.* Ex. N at 48.) There is no genuine issue of fact in the record as to whether extending Davis' leave of absence beyond thirty months "could have

1  plausibly enabled [him] to adequately perform his job." *Humphrey*, 239 F.3d at 1136 (quoting

2  *Kimbro*, 889 F.2d at 879). Boeing's failure to extend Davis' medical leave of absence beyond

3  thirty months, and to hold open his job indefinitely, did not constitute a failure to accommodate

4  Davis' disability in violation of the ADA. Summary judgment for Boeing on Davis'

5  discriminatory discharge claim is GRANTED.

6           C.       **Breach-of-Contract or -Promise Claims**

7           Liberally construed, Davis' complaint states not only ADA discrimination claims but also

8  two state-law breach-of-contract or breach-of-promise claims: that Boeing breached its contract

9  or promise to pay Davis relocation benefits and to confirm to hospitals that Davis was covered

10 under Boeing's health insurance plan without requiring Davis to effectively double-pay

11 premiums. Boeing does not identify these claims in Davis' complaint or move for summary

12 judgment on them. They remain.

13 **III.    CONCLUSION**

14          For the foregoing reasons, Boeing's motion for summary judgment (Dkt. No. 34) is

15 GRANTED in part and DENIED in part, and Davis' motion to deny Boeing's motion for

16 summary judgment (Dkt. No. 46) is DENIED in part and GRANTED in part. Summary

17 judgment for Boeing on Davis' claims that Boeing violated the ADA when it (1) failed to pay

18 him promised relocation funds, (2) failed to grant him requested handicapped parking, (3)

19 mistreated him during his time at the Charleston facility, and (4) terminated him is GRANTED;

20 summary judgment for Boeing on Davis' claim that Boeing violated the ADA when it double-

21 charged him health insurance premiums is DENIED; and summary judgment for Boeing on

22 Davis' state-law claims that Boeing breached its contract or promise to pay Davis relocation

23 funds and to cover Davis under its health insurance plan without requiring him to double-pay

24 premiums is DENIED.

25 //

26 //

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT
PAGE - 13

1  //

2  //

3  //

4      DATED this 23rd day of October 2012.

                    John C. Coughenour
                    UNITED STATES DISTRICT JUDGE

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT
PAGE - 14